Steve Dimopoulos, Esq.
Nevada Bar No. 12729
Paul A. Shpirt, Esq.
Nevada Bar No. 1044
Jared Kahn, Esq.
Nevada Bar No. 12603
DIMOPOULOS INJURY LAW
6671 South Las Vegas Boulevard, Suite 275
Las Vegas, Nevada 89119
O: (702) 800-6000
F: (702) 224-2114
sd@stevedimopoulos.com
ps@stevedimopoulos.com
jkahn@jk-legalconsulting.com

Steve W. Berman
(admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 268-9340
F: (206) 623-0594
steve@hbsslaw.com

Christopher R. Pitoun
(admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
T: (213) 330-7150
F: (213) 330-7152
christopherp@hbsslaw.com

*Attorneys for Plaintiffs*
[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JACK DIEP, individually; JORY LEVY, individually; JAMES DAYAP, individually; MARVIN CUTCHINS; and RAY CHARLES, JR.,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MEDIA CORPORATION d/b/a FORMULA ONE HEINEKEN SILVER LAS VEGAS GRAND PRIX, a foreign corporation; LAS VEGAS PAVING CORPORATION, a Nevada corporation; DOE INDIVIDUALS 1-20, inclusive; and ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-02124-GMN-NJK<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>Hon. Gloria M. Navarro |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.   PARTIES ................................................................................................................3

    A.   Plaintiffs ......................................................................................................3

    B.   Defendants ..................................................................................................3

III.   JURISDICTION AND VENUE ...........................................................................4

IV.   GENERAL ALLEGATIONS ................................................................................5

V.   CLASS ACTION ALLEGATIONS .....................................................................8

VI.   CLAIMS FOR RELIEF ......................................................................................11

COUNT I (Breach of Contract – Against Defendant Liberty) ...........................................11

COUNT II (Negligence – Against All Defendants) ..........................................................12

COUNT III (Violation of Deceptive Trade Practice Act – Against Defendant Liberty)
    (Nev. Rev. Stat. § 598.0903, *et. seq.*) ..................................................................13

PRAYER FOR RELIEF .....................................................................................................14

JURY DEMAND ................................................................................................................14

Plaintiffs Jack Diep, Jory Levy, James Dayap, Marvin Cutchins, and Ray Charles, Jr., by and through their undersigned counsel, based on their individual experiences, the investigation of counsel, and information and belief, bring this action individually and on behalf of a Class of similarly situated persons, and allege as follows:

## I.    INTRODUCTION

1. Much of what makes a ticket to a Formula 1 Grand Prix so unique is that it offers the holder access to a multiday, multievent experience. While tickets for most live sports only offer entry to a single game or day of events, over the course of a Formula 1 race weekend, fans can attend five events over several days. These events consist of practice runs, qualifying sessions, sprints, in addition to the final race. Each of these events offers something special. During the practice runs, fans get to watch as twenty of the world's most elite racers take twenty of the world's fastest cars onto a racetrack for the first time. These practice runs are the prelude to the qualifying session where drivers race against the clock to determine where they will start on race day. Finally, there is the race itself where the drivers push their cars and themselves to the absolute limit in relentless pursuit of becoming world champion.

2. During the 2023 racing season, twenty-two Formula 1 Grand Prix were held in twenty different countries around the world. Every single racetrack was different. Although formats varied slightly between Grand Prix, the bargain was always the same: every Formula 1 Grand Prix promised five events that ticketholders could attend.

3. This case arises because Defendant Liberty Media Corporation ("Liberty") failed to deliver those five events to ticketholders during the 2023 Las Vegas Grand Prix. On or about November 16, 2023, one of the drivers struck a manhole or water valve cover on the racetrack roughly nine minutes into the first practice run ("FP1"). The impact caused the manhole or water valve cover to become dislodged and destroyed the underside of the car. The dislodged cover soon damaged another car and forced race officials to stop the practice run.

4. Fans in attendance then waited for several hours while the racetrack was inspected for other potential hazards. Ultimately, Liberty removed all spectators from the viewing areas before the

practice runs would resume. As a result, no spectators were able to view FP1 which was cancelled due to the accident. Nor could spectators watch the second practice run ("FP2") even though Liberty still held the FP2 event.

5. The manhole or water valve cover should never have become dislodged. Liberty and Defendant Las Vegas Paving Corporation ("LV Paving") had a duty to ensure that the track was race ready before the Las Vegas Grand Prix began. A race ready track is fundamental to ensuring both driver and spectator safety. Defendants' breach of that duty not only risked safety but also caused ticketholders to be deprived of two of the five racing events they paid to see.

6. Attending a Grand Prix is an expensive proposition. At minimum, fans pay several hundred dollars to attend all three days. More commonly, fans will pay tens of thousands of dollars for a ticket. This, of course, says nothing of the thousands of dollars in travel expenses that a fan will also have to pay just to get to the Grand Prix. Fans are willing to pay these colossal sums because it offers multiple opportunities to physically experience a sport they have likely followed since childhood and have only been able to watch on television.

7. The tickets Liberty sold included a provision that if admission was refused or revoked without cause or the event was cancelled and not rescheduled for any reason, the ticket purchasers would receive a refund of up to the ticket's face value. However, contrary to this representation, Liberty has never offered refunds or made any effort to make their ticket holders whole.

8. Plaintiffs Jack Diep, Jory Levy, James Dayap, Marvin Cutchins, and Ray Charles, Jr., bring this class action against Defendants Liberty and LV Paving, individually and on behalf of all persons in the United States who purchased tickets and attended or sought to attend the Formula 1 FP1 and FP2 Practice Run events on or about November 16, 2023.

9. Plaintiffs and the members of the Class assert claims against Defendants for breach of contract, negligence, and violation of the Nevada Deceptive Trade Practices Act.

10. As a direct result of Defendants' wrongful conduct, Plaintiffs and the members of the Class have been harmed and are entitled to actual damages, including damages for the benefit of the bargain they struck when purchasing their tickets, statutory and consequential damages, attorneys'

fees, costs, and restitution, and compensation for any additional sums spent on any travel and lodging to attend the FP1 and FP2 Practice Events.

## II.   PARTIES

### A.   Plaintiffs

11. At all times relevant hereto, Plaintiff Jack Diep (hereinafter "Plaintiff Diep") was and is a citizen of Arizona domiciled in Mohave County, Arizona. Plaintiff Diep bought a ticket to the Las Vegas Grand Prix and attended or attempted to attend the FP1 and FP2 Practice Run events.

12. At all times relevant hereto, Plaintiff Jory Levy (hereinafter "Plaintiff Levy") was and is a citizen of Nevada domiciled in Clark County, Nevada. Plaintiff Levy bought a ticket to the Las Vegas Grand Prix and attended or attempted to attend the FP1 and FP2 Practice Run events.

13. At all times relevant hereto, Plaintiff James Dayap (hereinafter "Plaintiff Dayap") was and is a citizen of Nevada domiciled in Clark County, Nevada. Plaintiff Dayap bought a ticket to the Las Vegas Grand Prix and attended or attempted to attend the FP1 and FP2 Practice Run events.

14. At all times relevant hereto, Plaintiff Marvin Cutchins (hereinafter "Plaintiff Cutchins") was and is a citizen of California domiciled in Los Angeles County, California. Plaintiff Cutchins bought a ticket to the Las Vegas Grand Prix and attended or attempted to attend the FP1 and FP2 Practice Run events.

15. At all times relevant hereto, Plaintiff Ray Charles, Jr. (hereinafter "Plaintiff Charles") was and is a citizen of California domiciled in Los Angeles County, California. Plaintiff Charles bought a ticket to the Las Vegas Grand Prix and attended or attempted to attend the FP1 and FP2 Practice Run events.

### B.   Defendants

16. Defendant Liberty Media Corporation d/b/a Formula One Heineken Silver Las Vegas Grand Prix (hereinafter "Liberty") is, and was at all times mentioned herein, a Delaware corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in Englewood, Colorado. Liberty is authorized to conduct business in the State of Nevada and was and

is doing business in the State of Nevada, including the promotion, operation, management, and commercial distribution of the Formula One racing series.

17. Defendant Las Vegas Paving Corporation (hereinafter "LV Paving") is, and was at all times mentioned herein, a Nevada corporation, organized and existing under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada. LV Paving is duly licensed and authorized to conduct business in the State of Nevada and was and is doing business in the State of Nevada, including the installation, maintenance, and inspection of manhole or water valve cover seals including the manhole or water valve seal at issue in this matter.

18. That the true names and capacities of the Defendants DOES I through XX, inclusive, are unknown to Plaintiffs, who, therefore, sue said Defendants by said fictitious names. Plaintiffs are informed, believe, and thereon allege that each of the Defendants designated as DOES I through XX are owners, operators and/or individuals or agencies otherwise within possession and control of the motor vehicle herein mentioned and/or are individuals otherwise within the flow of traffic as related hereto. Plaintiffs are informed, believe, and thereon allege that Defendants ROE BUSINESS ENTITIES I through XX, are owners of the motor vehicle herein alleged and/or are in some manner responsible for the actions of its employees and/or assigns of Defendants designated as ROE BUSINESS ENTITIES I through XX. Plaintiffs are informed, believe, and thereon allege that each of the Defendants designated as a DOE or a ROE BUSINESS ENTITY is in some manner negligently, vicariously, statutorily, contractually, and/or otherwise responsible for the events and happenings referred to and caused damages proximately to Plaintiffs as herein alleged. Plaintiffs will ask leave of the Court to amend this Complaint to insert the true names of such Defendants when the same have been ascertained.

### III.    JURISDICTION AND VENUE

19. The Court has jurisdiction because the underlying matters to this Consolidated Class Action Complaint were removed to the District of Nevada by Liberty. *See* ECF No. 1; *see also* Notice of Removal, *Marvin Cutchins et. al., v. Liberty Media Corp. et. al.*, No. 2:23-cv-00048 (Jan. 5, 2024), ECF No. 1. Plaintiffs do not contest removal. The Court has jurisdiction because Plaintiffs voluntarily

1  submit to the jurisdiction of this Court concerning the allegations in this Consolidated Complaint and Plaintiff Levy and Plaintiff Dayap were and are domiciled in Nevada.

20. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332 because: a) diversity of citizenship exists between at least one member of the putative class and at least one defendant; and b) the proposed class includes at least 100 members; and c) the amount in controversy exceeds, in the aggregate, $5,000,000.00, exclusive of costs and interests.

21. Venue is appropriate in this District under 28 U.S.C. § 1331(b) because a substantial part of the events or omissions giving rise to the claim occurred this District.

## IV. GENERAL ALLEGATIONS

22. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

23. At all times pertinent, Defendants were agents, servants, employees, or joint ventures of every other Defendant herein, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants.

24. In advance of the Las Vegas Grand Prix, Plaintiffs purchased tickets and attended or sought to attend the Formula 1 FP1 and FP2 Practice Run events on or about November 16, 2023. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated claimants who also purchased tickets and attended or sought to attend the Formula 1 FP1 and FP2 Practice Run events on or about November 16, 2023.

25. On or about November 16, 2023, at approximately 8:30 p.m., Defendant Liberty conducted and/or caused to be conducted the FP1 Practice Run event wherein the drivers participating in the main Formula 1 Race were to take practice laps. As this October 2023 screenshot from Defendant Liberty's website shows, Defendant Liberty represented the FP1 Practice Run as the

kickoff event to a highly anticipated three-day marathon of high octane racing which together marked the first Formula One race in Las Vegas since 1982.[1]



26.     Upon information and belief, over 35,000 invitees purchased tickets from Liberty to appear and attend the FP1 Practice Run event. The ticket prices varied based on location and seating position but ranged, generally, from a few hundred to tens of thousands of dollars.

---

[1] https://web.archive.org/web/2023101154154/https://www.f1lasvegasgp.com/ (last visited May 15, 2024).

1    27.    On or about November 16, 2023, approximately nine minutes into the FP1 Practice Run, a manhole or water valve cover on the track became dislodged, causing damage to two of the racecars, and stopping the FP1 Practice Run race immediately.

28.    After an approximate 2½-hour delay for track repairs, all spectators were removed from the facility and viewing areas ahead of the FP2 Practice Run event.



29.    After completing the track repairs and cancelling the FP1 Practice Run event, the FP2 Practice Run event was then rescheduled to start at 1:30 a.m.

30.    The FP2 Practice Run event did not start until 2:30 a.m. and none of the invitees were allowed to watch the event live at the facility and viewing areas as they had previously been escorted off of the property at 1:30 a.m., and refused re-entry for the FP2 Practice Run.

31.    Liberty conducted the FP2 Practice Run event without any invitees and ticketholders permitted to attend.

32. Upon information and belief, Liberty did not offer any refunds to any of the approximately 35,000 invitees that sought to attend the FP1 and FP2 Practice Run events despite the fact that the FP1 Practice Run was cancelled and participants were told to leave before the FP2 Practice Run could begin.

33. Upon information and belief, the manhole or water valve cover seals that were supposed to surround the manhole or water valve cover were installed, worked on and inspected by Defendant LV Paving in the course and scope of their contract to work on the subject track and make the track race ready.

34. Upon information and belief, the work on the track performed by LV Paving, including installing the subject failed manhole or water valve cover and concrete work sealing the manhole or water valve cover, was completed only days before the Practice Run events and the track was not in race-ready condition at the time of the event.

35. Upon information and belief, Liberty and/or its contractors and safety organizations had a duty to inspect the track to make sure that it was safe for use by the racers and was race-ready for the Practice Run events.

36. Upon information and belief, Liberty and/or its contractors and safety organizations failed to detect the flaws and/or poor installation of the subject manhole or water valve cover sealed by LV Paving and failed to ensure that the track was race-ready for the Practice Run events.

## V.  CLASS ACTION ALLEGATIONS

37. Plaintiffs repeat and reallege each and every fact and allegation contained in this Complaint and incorporate the same herein by reference as though fully set forth herein.

38. Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), Plaintiffs assert claims on behalf of a nationwide class consisting of: All persons in the United States who purchased tickets and attended or sought to attend the Formula 1 FP1 and FP2 Practice Run events on or about November 16, 2023. Excluded from the Class are Defendants, and any of Defendants' corporate parents, affiliates, subsidiaries, officers, directors, legal representatives, successors, and assigns. Also

excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

39. This action has been brought and may be properly maintained as a class action as it satisfies the requirements of both Rule 23(a) and 23(b)(3).

    a. Plaintiffs allege that the Class consists of 35,000 invitees who purchased tickets from Liberty to attend the "Practice Run" event and suffered damages as a result. The members of the Class are so numerous that joinder of all such individuals would be impractical and that disposition of their claims in a representative suit is a benefit to the court.

    b. Plaintiffs have a well-defined community of interest or questions of fact and law common to each member of the class in that all members of the class have suffered injuries due to improper construction and inspection of the race track, cancelation of the event and lack of refunds, as well as all other relevant causes. The claims herein alleged by Plaintiffs are representative of those claims which could be alleged by such members of the Class.

    c. Plaintiffs' claims are typical as the members of the Class as their interests are coincident with, not antagonistic to, the other members of the Class since they were damaged by the acts and practices of the Defendants.

    d. Plaintiffs will fairly and adequately protect the interest of the Class, as each has purchased tickets to the Practice Run event, and each was damaged by the acts and practices of Defendants, and each of them. Class Representative Plaintiffs have no conflicts with the other attendees and invitees to the same event, with respect to the claims alleged.

    e. Plaintiffs have retained counsel competent and experienced in class action litigation.

    f. Plaintiffs allege that questions of law and fact common to the Class predominate over questions affecting the individual class members, and that the interest of justice and efficiency will be best served by bringing this action as a class action with regard to the aforementioned interests. The common questions include:

    i. Whether Defendant Liberty's conduct breaches their contract with Plaintiffs and the Class;

    ii. Whether Defendants breached their duty to ensure that the track was race ready by the time of the Practice Run events;

    iii. Whether Defendants engaged in deceptive trade practices that harmed Plaintiffs and the Class;

    iv. Whether Defendants are required to give a refund and reimburse all related expenses such as travel expenses as a result of the cancellation of the Practice Run event, rather than ticket price only;

    v. Whether Plaintiffs and members of the Class are entitled to damages, costs, or attorneys' fees from Defendants; and

    vi. Whether Plaintiffs and members of the Class are entitled to compensatory damages as a result of the breaches by Defendants.

  g. A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and the burden on the court that individual actions would create. Plaintiffs also allege that the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the class which would establish incompatible standards of conduct by the parties opposing the class, and adjudication with respect to individual members of the Class would be dispositive of the interest of other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

  h. The members of the Class are easily located and identified as the names and addresses of all individual purchasers of tickets for the Practice Run event are maintained by Liberty and ticket resellers.

i. Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

40. As of the filing of this Complaint, none of the participants have received any refunds, and no refunds have been issued through Liberty and/or its agents or third-party ticket vendor(s).

41. Even if ticket prices are refunded, no offer has been made to reimburse racegoers for other out-of-pocket expenses they incurred in connection with the event cancellation, including transportation, lodging, food, merchandise sales, transaction fees, and other such expenses.

## VI.   CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract – Against Defendant Liberty)

42. Plaintiffs repeat and reallege the allegations contained in the paragraphs previously set forth as fully set forth herein.

43. This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Liberty's breaches of its contract with attendees/invitees and/or Doe Individuals 1-20.

44. Plaintiffs, along with all putative Class members, were third-party beneficiaries of Defendant's contract with any third-party ticket vendor(s) and/or Doe Individuals 1-20, and Plaintiffs paid meaningful compensation as consideration to attend the Practice Run events.

45. Plaintiffs and all putative Class members performed under the contract, specifically, by tendering payment for the Practice Run event tickets to Defendant and/or Defendant's agents and complied with all conditions precedent under the contract.

46. Due to Liberty's refusal to allow ticketholders to attend the FP2 Practice Run event despite being held by Liberty, Plaintiffs, and all putative Class members were deprived of attending the Practice Run events they paid to see through no fault of their own, and they did not receive the benefit of their bargain with Defendant.

47. Therefore, Plaintiffs and putative Class members are entitled to refunds of the out of-pocket expenses they incurred in connection with the FP2 Practice Run event to which the ticketholders were refused entry.

48. As a result of Defendant's breaches of contract, Plaintiffs and putative Class members have incurred damages in an amount to be proven at trial.

## COUNT II
### (Negligence – Against All Defendants)

49. Plaintiffs repeat and reallege the allegations contained in the paragraphs previously set forth as fully set forth herein.

50. Defendants assumed a duty to exercise due and reasonable care for the financial property interests of their patrons, which includes ensuring that the track is race ready and safe to use, to prevent foreseeable cancellations in order to mitigate any damages incurred by its patrons, including members of the Class.

51. By their acts and omissions described herein, Defendants unlawfully breached this duty. The Class was damaged when Liberty cancelled the FP1 Practice Run due to the condition of the race track causing damage to two of the cars and the need to inspect the track to ensure it was race ready. The Class was further damaged when the delay caused by the inspection led to the delay of the FP2 Practice until 2:30 a.m., at which time Plaintiffs and the Class were refused entry to the event.

52. Defendants breached the duties owed to Plaintiffs and the Class, and under the circumstances, Defendants' breaches constitute negligent, willful, and/or reckless conduct.

53. As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and inactions, Plaintiffs and members of the proposed Class have been caused to suffer damages.

54. Therefore, Plaintiffs and members of the proposed Class claim money damages in an amount that will fairly and reasonably compensate them for the harm caused by the Defendants.

# COUNT III
### (Violation of Deceptive Trade Practice Act – Against Defendant Liberty)
### (Nev. Rev. Stat. § 598.0903, *et. seq.*)

55. Plaintiffs repeat and reallege the allegations contained in the paragraphs previously set forth as fully set forth herein.

56. Pursuant to Nev. Rev. Stat. § 598.092(4), Defendant Liberty engaged in a "deceptive trade practice" when, in the course of their business or occupation, they failed to make delivery of goods or services for sale or lease within a reasonable time, or to make a refund for the goods or services if they allow refunds.

57. The tickets purchased by the attendees of the Practice Run events included a provision that if admission is refused or revoked without cause or the event is cancelled and not rescheduled for any reason, the ticket purchasers would receive a refund of up to the ticket's face value as set by the Promoter.

58. The ticket sales included the following provision:

> ALL TICKET SALES ARE FINAL AND NON-CANCELLABLE. NO REFUNDS, CREDITS OR EXCHANGES. THE SOLE AND EXCLUSIVE REMEDY, IF ANY, if admission is refused or revoked without cause, capacity limits result in ticket cancellation, or the Event is canceled and not rescheduled for any reason, is a refund of up to the ticket's face value as set by the Promoter ("Face Value"). The Promoter's liability for breach of the Terms and Conditions shall not exceed Face Value. IN NO EVENT SHALL THE PROMOTER, FOWC, FOML OR ANY OF THEIR AFFILIATES OR ANY OTHER RELEASEE (DEFINED BELOW) BE LIABLE FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, INDIRECT OR EXEMPLARY DAMAGES OF ANY KIND, WHETHER OR NOT ANY SUCH DAMAGES ARE REASONABLY FORESEEABLE, INCLUDING ANY AMOUNT PAID IN EXCESS OF FACE VALUE FOR THE TICKET OR ANY EXPENSES INCURRED BY THE HOLDER IN CONNECTION WITH THE EVENT OTHER THAN THE FACE VALUE.

59. Defendant Liberty engaged in a deceptive trade practice because, in spite of its representations at the point of sale, none of the attendees and/or invitees who purchased the tickets to the Practice Run event, and who were deprived of the opportunity to attend the same through no fault of their own, have received and/or were offered any refunds for their tickets.

60. As a result of Defendant's deceptive trade practices, Plaintiffs and the Class were damaged and required to retain counsel to prosecute their claims.

61. Accordingly, Plaintiffs and the Class seek their actual and consequential damages, punitive damages, an order enjoining Liberty's deceptive acts or practices, costs of Court, attorney's

fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  Nev. Rev. Stat. § 41.600.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs expressly reserve their right to amend this Complaint at the time of trial of the actions herein to include all items of damages not yet ascertained, and demand Judgment against Defendants as follows:

A.   For an Order determining at the earliest possible time that this matter may proceed as a class action under Federal Rule 23 and certifying this case as such, defining the Class as requested herein, finding the Plaintiffs are proper representatives of the Class requested, and appointing Plaintiffs' counsel as Class Counsel;

B.   For themselves and each Class member their actual compensatory damages;

C.   General damages sustained by Plaintiffs and putative Class members;

D.   Consequential or Special damages to be determined at the time of trial;

E.   Actual and incidental expenses already incurred and to be incurred;

F.   Reasonable attorney's fees and costs of suit;

G.   Interest at the statutory rate; and

H.   For such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  May 24, 2024.                     Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By */s/  Steve W. Berman*
    Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 268-9340
F: (206) 623-0594
steve@hbsslaw.com

Christopher R. Pitoun (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
*christopherp@hbsslaw.com*

Jared Kahn, Esq.
Nevada Bar No. 12603
Steve Dimopoulos, Esq.
Nevada Bar No. 12729
Paul A. Shpirt, Esq.
Nevada Bar No. 1044
DIMOPOULOS INJURY LAW
6671 South Las Vegas Boulevard, Suite 275
Las Vegas, Nevada 89119
O: (702) 800-6000
F: (702) 224-2114
sd@stevedimopoulos.com
ps@stevedimopoulos.com
jkahn@jk-legalconsulting.com

Cheryl H. Wilson, Esq.
Nevada Bar No. 8312
Victoria L. Hightower, Esq.,
Nevada Bar No. 10897
IVIE McNEILL WYATT PURCELL & DIGGS
7455 Arroyo Crossing, Suite 220
Las Vegas, NV 89113
(725) 677-4055 (Telephone)
(725) 239-4055 (Facsimile)
Email: cwilson@imwlaw.com
Email: vhightower@imwlaw.com

Rodney S. Diggs, Esq. (admitted *pro hac vice*)
California Bar No. 274459
IVIE McNEILL WYATT PURCELL & DIGGS
444 S. Flower Street, 18th Floor
Los Angeles, CA 90071
(213) 489-0028 (Telephone)
Email: rdiggs@imwlaw.com

*Attorneys for Plaintiffs*