UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JACK DIEP, *et al.*,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>LIBERTY MEDIA CORP., *et al.*,<br><br>　　　　　　Defendants. | Case No.: 2:23-cv-02124-GMN-NJK<br><br>**ORDER** |

　　　Pending before the Court is the Motion to Dismiss, (ECF No. 38), filed by Defendant Las Vegas Paving Corporation. Plaintiffs did not file a Response.

　　　Also pending before the Court is the Motion to Dismiss, (ECF No. 39), filed by Defendant Liberty Media Corporation. Plaintiff filed a Response, (ECF No. 43), to which Defendant Liberty Media replied, (ECF No. 45).

　　　Further pending before the Court is Plaintiffs' Request for Judicial Notice in Support of their Opposition to Defendant Liberty Media's Motion to Dismiss, (ECF No. 44), which the Court construes as a Motion. Defendant Liberty Media filed a Response, (ECF No. 46).

　　　For the reasons discussed below, the Court GRANTS Las Vegas Paving Corporation's Motion to Dismiss, GRANTS, in part, Liberty Media's Motion to Dismiss, and DENIES without prejudice Plaintiffs' Request for Judicial Notice.

I.　**BACKGROUND**

　　　This action arises from a racetrack malfunction that occurred during the first day of the Formula 1 Grand Prix ("F1") and resulted in a practice run being rescheduled for after hours. (*See generally* Consolidated Complaint ("CC"), ECF No. 37). Class action Plaintiffs were ticket holders for the three-day, 2023 F1 Event (the "Event"), which was promoted to include practice runs, qualifying sessions, sprints, and the final race, as well as entertainment, food, and

beverages. (*Id*. ¶ 1). Nine minutes into the First Practice Run ("FP1") of the Event, a driver struck a manhole or water valve cover on the racetrack. (*Id*. ¶ 3). The impact caused the manhole or water valve cover to become dislodged and destroyed the underside of the car. (*Id*.). The dislodged cover soon damaged another car and forced race officials to stop the practice run. (*Id*.). Fans in attendance waited for several hours while the racetrack was inspected for other potential hazards. (*Id*.). After many hours, Defendant Liberty Media removed all spectators from the viewing areas. (*Id*. ¶ 4). FP1 was ultimately cancelled due to the accident. (*Id*.). Moreover, spectators were not able to watch the second practice run ("FP2") because Liberty Media rescheduled FP2 after the Event closed to spectators. (*Id*.). Defendant did not offer refunds to any of the approximately 35,000 invitees that sought to attend the FP1 and FP2 Practice Run events, even though the FP1 Practice Run was cancelled, and participants were told to leave before the FP2 Practice Run could begin. (*Id*. ¶ 32).

Plaintiffs bring the instant class action lawsuit alleging claims for breach of contract, negligence, and violation of Nevada Revised Statute ("NRS") § 598.0903, Nevada's Deceptive Trade Practice Act ("NDTPA"). (*See generally id*.).

## II. LEGAL STANDARD

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant. . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III.  DISCUSSION

Plaintiffs' CC alleges claims against Defendant Liberty Media for breach of contract and violation of the NDTPA. (*See generally* CC). The CC also brings a negligence cause of action against both Defendants. (*Id.*). Defendants each move to dismiss Plaintiffs' CC for failure to state a claim.

As a preliminary matter, Plaintiffs made it clear in their Response to Defendant Liberty Media's Motion to Dismiss, that "they do not intend to move forward with their negligence claim against either [Defendant]." (Resp. at 7 n.9, ECF No. 43). As such, the Court will not address Plaintiffs' negligence cause of action and this claim is DISMISSED. Moreover, because the only claim alleged against Defendant Las Vegas Paving was the negligence cause of action, the Court hereby DISMISSES Las Vegas Paving as a party to this matter. Thus, the only remaining party in this action is Defendant Liberty Media and the two remaining claims to analyze are breach of contract and a violation of the NDTPA alleged against Liberty Media. The Court begins with Defendant Liberty Media's first argument for dismissal: Plaintiffs fail to

state a claim for which relief may be granted because they do not allege a cognizable legal injury.

### A. Cognizable Legal Injury

Defendant Liberty Media moves to dismiss Plaintiffs' CC for failure to state a claim for which relief may be granted because Plaintiffs allege no cognizable legal injury. (*See* Mot. Dismiss 15:15–22:8, ECF No. 39).

Three elements must be present for a plaintiff to have standing to bring a lawsuit: (1) the plaintiff must have suffered a cognizable injury in fact; (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) the injury must be redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss courts 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). In the absence of a legally cognizable injury, a plaintiff's claims cannot survive the pleading stage. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2002).

Defendant argues that Plaintiffs fail to establish the first element of standing and as such, their CC should be dismissed in its entirety. (*See* Mot. Dismiss 15:15–22:8). Specifically, Liberty Media argues that Plaintiffs injury is not cognizable because tickets to entertainment events are revocable licenses, granting ticketholders nothing more than a right to enter the event grounds; and the "disappointed fans" line of caselaw compels dismissal. (*Id.*). Defendants primarily rely on a Ninth Circuit case to bolster their claims. (*See generally id.* (citing *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 942 F.3d 1160 (9th Cir. 2019)).

The *In re Pacquiao* plaintiffs claimed boxers Manny Pacquiao and Floyd Mayweather, as well as the boxing event's promoters, worked a "magnificent con" on ticketholders by

allegedly concealing Pacquaio's pre-fight shoulder injury, resulting in a lackluster event rather than the promised "Fight of the Century." *In re Pacquiao*, 942 F.3d at 1164.  The Ninth Circuit explained that "a majority of courts that have considered claims brought by dissatisfied sports fans follow what is known as the 'license approach.'" *Id.* at 1166–67.  "Under that approach, a ticket holder enjoys only the right to view the ticketed event, and therefore no cognizable injury arises simply because the event did not meet fan expectations." *Id.* at 1667.  While the Ninth Circuit did not adopt the license approach, they found that "whatever subjective expectations Plaintiffs had before the match did not negate the very real possibility that the match would not, for one reason or another, live up to those expectations," and thus the *In re Pacquiao* plaintiffs did not suffer a cognizable legal injury. *Id.* at 1169–70.

Plaintiffs argue that *In re Pacquiao* is not on point because the plaintiff fans' purported injury was that they were disappointed with the fighter's performance. (Resp. 13:5–21).  Here, Plaintiffs' injury is that they had an objective belief that they bought tickets to an Event that included the opportunity to watch the FP2 Practice Run and because of Liberty Media's failure to properly maintain the racetrack, Plaintiffs could not watch it. (*Id.*).  Importantly, the Ninth Circuit made clear that they did not adopt the license approach. *In re Pacquiao*, 942 F.3d at 1169.  Accordingly, the Court finds that the present case is distinguishable from *In re Pacquiao* because Plaintiffs do not characterize themselves as mere "disappointed fans" whose "subjective expectations were not met" like the *In re Pacquiao* plaintiffs. (*Id.* 13:6–7).  Instead, they identify as a group whose "objective expectations" were not met. (*Id.* 13:19–20).  Thus, the Court finds that Plaintiffs have plead a cognizable legal injury sufficient to survive the Motion to Dismiss.

### B. Breach of Contract

Liberty Media next argues that Plaintiffs fail to state a claim for breach of contract because there is a lack of privity, lack of contractual remedy, and lack of breach. (Mot. Dismiss 22:11). The Court begins by discussing whether there is privity of contract between the Parties.

#### 1. Privity

Defendant argues that there is no privity of contract between Plaintiffs and Liberty Media thereby foreclosing Plaintiffs' breach of contract claim against it. (*Id.* 22:12). Indeed, Plaintiffs admits that they contracted with Las Vegas Grand Prix, Inc. ("LVGP") when they purchased their Event tickets, and not Defendant. (Resp. 16:15–16). Plaintiffs attempt to overcome their lack of privity with Defendant by asserting an agency theory of liability in their Response. (*See id.* 16:14–18:5). They also filed a Request for Judicial Notice asking the Court to judicially notice screenshots of Liberty Media's website that establish an agency relationship exists between LVGP and Liberty Media. (*See generally* Request for Jud. Notice, ECF No. 44). But Plaintiffs did not plead facts in their CC to support such a theory. (*See generally* CC). Plaintiffs cannot avoid dismissal by asserting new facts in their Response. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). As such, the Court gives Plaintiffs leave to amend to allege facts about agency liability because it is not apparent that amendment would be futile. The Court also DENIES without prejudice Plaintiffs' Request for Judicial Notice.

#### 2. Contractual Remedy

Defendant also argues that the Ticket Terms explicitly preclude the refunds and other remedies that Plaintiffs demand. (Mot. Dismiss 30:14). As a general rule, "when a contract is clear on its face, it will be construed from the written language and enforced as written." *Buzz Stew, LLC v. City of N. Las Vegas*, 341 P.3d 646, 650 (Nev. 2015). Issues of contractual construction present "question[s] of law" appropriate for resolution at the pleading stage.

*Phillips v. Parker*, 794 P.2d 716, 718 (Nev. 1990); *see Cross v. Anthony & Sylvan Pools Corp.*, 2020 WL 4078191, at *2 (D. Nev. July 20, 2020) (enforcing "unambiguous" contract and dismissing action for failure to state claim where alleged misconduct was "expressly permitted" by contract).

Here, the Ticket Terms provide: "THE SOLE AND EXCLUSIVE REMEDY, if admission is . . . revoked without cause . . . or the Event is canceled and not rescheduled for any reason, is a refund of up to the ticket's face value set by Promoter." (Event Website at 10, Ex. 1 to Mot. Dismiss, ECF No. 39-1). Moreover, they provide that "[t]here are no refunds if a session or day of the Event is delayed, interrupted, or not completed." (*Id*. at 11). The Ticket Terms further state that "IN NO EVENT," "SHALL" the Promoter or its affiliates "BE LIABLE" for "CONSEQUENTIAL," "INCIDENTAL," and "INDIRECT . . . DAMAGES OF ANY KIND," even if "REASONABLY FORESEEABLE." (*Id*. at 10).

Plaintiffs argue that the Ticket Terms appear to be a "browsewrap agreement." (Resp. 18:13). Browsewrap agreements are "where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Indeed, courts are generally "reluctan[t] to enforce browsewrap agreements against individual consumers." *Id.* at 1178. In order for browsewrap to be enforceable, the website user must have actual knowledge or inquiry notice of the terms. *Id*. at 1176–77. "In short, the conspicuousness and placement of the "Terms of Use" hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement." *Id.* at 1177. Ultimately, the question of whether the disclosure provides reasonably conspicuous notice, though a question of law, is a fact-intensive inquiry. *Lawrence v. Finicity Corp*., 2024 WL 584615, at *16 (E.D. Cal. Feb. 13, 2024).

Here, there are no facts pled in the CC that would allow the Court to conduct the fact intensive require needed to determine whether Defendant's browsewrap is enforceable at this stage in the proceedings. Thus, because the Court already gave Plaintiffs leave to amend their breach of contract claim, Plaintiffs may consider this when amending their CC.

### 3. Breach

Lastly, Defendant argues that Plaintiffs fail to properly plead that a breach occurred. (Mot. Dismiss 25:5). A claim for breach of contract must allege (1) the existence of an enforceable contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on other grounds* ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement."). An enforceable contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

Defendant argues that Plaintiffs "received exactly what they paid for" when they were permitted "entry into the Event, where they had the opportunity to view FP1, enjoy for five hours multiple live musical acts, entertainment options, and an 'all-inclusive' food and beverage package on Day 1, and more on Days 2 and 3." (Mot. Dismiss 25:9–11). However, in the CC, Plaintiffs plead that they had an objective expectation of attending the FP2 Practice Run because it was advertised as part of the Event. (CC ¶¶ 26, 32). They further plead that they were not permitted to watch the practice run which is the heart of their breach of contract claim. (*Id.* ¶¶ 29–31). Thus, notwithstanding the deficiencies discussed above, Plaintiffs plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face as to whether a breach occurred.

1    In conclusion, Plaintiffs breach of contract claim is DISMISSED because their exists no privity of contract between Plaintiffs and Liberty Media but the Court gives Plaintiffs leave to amend their CC pursuant to the Court's discussion above because amendment is not clearly futile.

### C. NDTPA

Lastly, Liberty Media argues that Plaintiffs' NDTPA claim fails for four reasons: (1) sports tickets are not "goods or services" under the NDTPA, (2) the Ticket Terms do not 'allow[]' the refunds Plaintiffs claim, (3) the claim is barred by the economic loss doctrine, and (4) Plaintiffs' request for punitive damages has no legal or factual basis.[1] (Mot. Dismiss 29:1–4). Because the Court finds that the NDTPA is inapplicable to Plaintiffs' claims, the Court need only address Defendant's first argument.

The NDTPA proscribes various forms of deceptive trade practices. NRS §§ 41.600, 598.0903 *et seq*. Plaintiffs bring their NDTPA claim under a single provision of the statute which provides that a business engages in deceptive trade practice when it "(f)ails to make delivery of goods or services for sale or lease within a reasonable time or to make a refund for the goods or services, if he or she allows refunds." *Id.* § 598.092(4).

Liberty Media argues that the F1 tickets Plaintiffs bought cannot be considered a good or a service therefore making the NDTPA inapplicable here. (Mot. Dismiss 29:5–16). In Response, Plaintiffs argue that the Court should liberally construe the NDTPA and hold for the first time in Nevada that a sports ticket is a service. (Resp. 22:6–16).

Section 598.092(4) applies only to refunds for "goods or services." *See* NRS § 598.092(4). The NDTPA does not define "goods" or "services." *See id.* § 598.0903. But according to Black's Law Dictionary, "Goods" are "tangible or movable personal property,"

---

[1] In Plaintiffs' Response they state that they "drop their request for punitive damages." (Resp. at 25 n.140). As such, the Court need not address the merits of Plaintiffs' request for punitive damages.

and "services" are "[l]abor performed in the interest or under the direction of others."[2] *Goods & Services*, BLACK'S LAW DICTIONARY (11th ed. 2019). Nevada courts have held that the NDTPA regulates, for example, the sale of tobacco products, firearm attachments, and website-design services. *See R.J. Reynolds Tobacco Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 514 P.3d 425, 433 (Nev. 2022); *Prescott v. Slide Fire Sols.*, LP, 410 F. Supp. 3d 1123, 1138 (D. Nev. 2019); *Two Men & a Truck/Int'l, Inc. v. Moving Auth. Enter. Corp.,* No. 218CV00391GMNVCF, 2019 WL 3604629, at 3 (D. Nev. May 17, 2019)*, report and recommendation adopted*, No. 218CV00391GMNVCF, 2019 WL 3937615 (D. Nev. Aug. 20, 2019). In contrast, courts applying the NDTPA have held that the sale or lease of real property, for instance, is neither a "good" nor "service" under the Act. *See, e.g., Dowers v. Nationstar Mortg.*, LLC, 852 F.3d 964, 972 (9th Cir. 2017); *Alexander v. Aurora Loan Servs.*, No. 2:09-CV-1790-KJD-LRL, 2010 WL 2773796, at *2 (D. Nev. July 8, 2010).

Courts in Nevada have not been presented with the question of whether a ticket to a sporting event is considered a good, a service, or neither. But courts in California have been presented with similar questions and the Court finds those holdings persuasive for its analysis because "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Leigh-Pink v. Rio Properties*, LLC, 989 F.3d 735 (9th Cir. 2021), *certified question answered*, 512 P.3d 322 (Nev. 2022). California courts have held that California's analogous deceptive trade practices statute does not apply to intangible rights, like tickets to theme parks, access to poker games, and passes for television series, because they are not goods or services. *See, e.g., Hall v. Sea World Ent., Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *15 (S.D. Cal. Dec. 23, 2015) (amusement park) (collecting cases); *Brill v. Postle*, No. 2:19-CV-02027 WBS AC, 2020 WL 2936688, at *1 (E.D. Cal. June 3, 2020)

---

[2] Nevada courts construe statues based on their "plain meaning," often with the aid of Black's Law Dictionary. *See e.g., Veil v. Bennett*, 348 P.3d 684, 686 (Nev. 2015).

(poker game); *Lazebnik v. Apple, Inc.*, No. 5:13-CV-04145-EJD, 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (television series). Thus, if presented with the question, the Court is persuaded that the Nevada Supreme Court would decline to hold that a ticket to a sporting event is a good or service.

In conclusion, because no Court in Nevada has held that the NDTPA applies to sports tickets, and because it is likely that the Nevada Supreme Court would hold that the NDTPA is in fact inapplicable here, the Court finds that Plaintiffs have failed to state a claim for relief as to their NDTPA claim. Accordingly, Plaintiffs' NDTPA claim is DISMISSED.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Liberty Media's Motion to Dismiss, (ECF No. 39), is **GRANTED, in part**. Plaintiffs sufficiently plead that they have a cognizable injury but fail to sufficiently plead their breach of contract and NDTPA claim.

**IT IS FURTHER ORDERED** that Plaintiffs shall have 21 days from the date of this Order to file an amended complaint amending their breach of contract claim only.

**IT IS FURTHER ORDERED** that Defendant Las Vegas Paving's Motion to Dismiss, (ECF No. 24), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Las Vegas Paving is **DISMISSED** as a Party to this action.

**IT IS FURTHER ORDERED** that Plaintiffs' Request for Judicial Notice in Support of their Opposition to Defendant Liberty Media's Motion to Dismiss, (ECF No. 44), is **DENIED** without prejudice.

DATED this __19__ day of February, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court